John S. GRAEHLING, Plaintiff–
Appellant,

v.

VILLAGE OF LOMBARD, ILLINOIS,
and Steven Williams, Defendants–
Appellees.

No. 95–1263.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1995.

Decided June 20, 1995.

James T. Harrison (argued), David M. Ososky, Woodstock, IL, for plaintiff-appellant.

Russell W. Hartigan (argued), Keith A. Mandelski, James P. Bartley, Michael J. Duggan, Julianne Schumacher Gran, Klein, Thorpe & Jenkins, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Police in the Village of Lombard were not amused when John Graehling pulled away from a gas station with the nozzle still attached to his car, yanking the pump out of the ground. It did not help matters that Graehling was a fellow member of the police force and that the car was his police car. The Village paid for the damage and suspended Graehling for three days. Emulating Lt. Frank Drebin of Police Squad, Graehling repeated the stunt, demolishing another gas pump. He was unable to write a report about the second incident; his hands were shaking violently and he was suffering blackouts. Graehling's fellow officers called for an ambulance, and he was admitted to a hospital.

Graehling had been suspended for 30 days following an earlier incident in which he struck a prisoner. A psychiatrist concluded after the second gas station debacle that Graehling suffers from bipolar manic depression, alcoholism, and post-traumatic stress syndrome. Steven Williams, the Village's deputy chief of police, concluded that Graehling was no longer fit for duty. On January 10, 1991, Williams summoned Graehling to his office and offered him two choices: resign immediately, but with an effective date far enough ahead for his pension to vest, or be sent home on leave. Graehling was out of sick leave and vacation days, so the second option would have cut off his income. He took the first option, after changing the effective date of the resignation to September 4, 1993, to ensure that he would complete 20 years of service. On January 14, 1991, the Board of Fire and Police Commissioners accepted Graehling's resignation. Williams then assigned Graehling to back-office duties.

■ Nine days before his scheduled departure, Graehling asked the Village to let him stay on the police force. The Village refused "on the basis that his resignation was effective and, thus, irrevocable as of the date of its acceptance at the January 14, 1991 meeting of the Fire and Police Commissioners." This language, like all of the facts we have recited, appears in Graehling's complaint seeking relief under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. The district court dismissed the suit under Fed.R. 12(b)(6). 1994 U.S.Dist. LEXIS 17752. Like the district court, we conclude that the ADA does not apply to resignations tendered before its effective date, and the vivid details in the complaint show that Graehling is not entitled to relief. He has pleaded himself out of court.

■ Let us start with the ADA. Although the President signed the ADA on July 26, 1990, its rules applicable to employment were deferred until July 26, 1992. 42 U.S.C. § 12111 note—Effective Date. Sacking a police officer whose alcoholism interfered with his job or endangered the safety of others did not violate the Rehabilitation Act, which governed the Village's conduct in January 1991. See 29 U.S.C. § 706(7)(B), limiting the scope of 29 U.S.C. §§ 793, 794. Graehling submits that once the ADA took effect, however, the Village could not enforce his resignation. As he sees things, the police force committed two acts of handicap discrimination: extracting the resignation and implementing it. The first was not illegal, but the second, coming after the ADA, was, the argument concludes. The difficulty with the argument is that numerous cases hold that a separation at a time established by an earlier decision is *not* a fresh act of discrimination. Only the original decision to let the employee go is subject to analysis under the anti-discrimination laws. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Lever v. Northwestern University,*

979 F.2d 552 (7th Cir.1992); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 449–50 (7th Cir.1990). Cf. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

■ These cases all deal with the statute of limitations rather than with the effect of a newly-operative law, but the principle for which they stand is equally apt today. "The premise of these cases is that the employer took one dispositive act. Like punching someone in the nose, this act may lead to injury in the future, but when there is only one wrongful act the claim accrues with the first injury." *Palmer v. Board of Education*, 46 F.3d 682, 685–86 (7th Cir.1995). If the actual end of employment were a new act of discrimination, then the statute of limitations would run anew from that date. See *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). But *Ricks* and cases in its wake hold that a discharge with a deferred effective date entails only one discriminatory decision. "An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Lever*, 979 F.2d at 556. Cases such as *Ricks* and *Lever* interpret 42 U.S.C. § 2000e–5, part of the Civil Rights Act of 1964, but they apply directly (rather than by analogy) because the ADA incorporates the enforcement provisions of Title VII. See 42 U.S.C. § 12117(a). So for Graehling the critical decision preceded the ADA's effective date. Cf. *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

■ Now one could imagine an employer treating a resignation or discharge as tentative—no more than the status of a recommendation—so that the vital decision is whether to let the initial act hold sway. Consider the Cabinet of the United States. Many Presidents require their cabinet officers to submit undated letters of resignation, which the President may accept when political circumstances dictate while permitting the cabinet member to save face. ("I wasn't fired; I quit to return to my career in private life.") The real decision is to put a date in the letter and announce the "resignation" to the public. Similarly, we suppose, the Village of Lombard could collect resignations from its police officers, dated the 20th anniversaries of their service, accept them all, but relent when they wanted an officer to stick around. Graehling's complaint alleges that the Village told him that the resignation was irrevocable. A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Sanjuan v. American Board of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 250–51 (7th Cir.1994); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir.1986). One such hypothetical fact is that the Village was lying—that it does not really treat resignations as irrevocable. Suppose the Village had a sheaf of resignations and, after July 26, 1992, enforced those by persons with disabilities but relented for non-disabled officers. That would be a post-ADA decision on the basis of disability, one within the coverage of the Act. Cf. *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 435 (7th Cir. 1987). But at oral argument Graehling's lawyer said that he had no reason to suppose that the Village had *ever* let an employee retract a resignation. Counsel did not ask for an opportunity to inquire into the subject by discovery. As master of the complaint, Graehling can decide which lines of inquiry to abjure. He apparently views his complaint as his case; he is content to stand on it rather than to pursue new lines; and if this is all Graehling has, he loses. In 1993 the Village did not make a new decision, discriminatory or otherwise, which scotches any effort to invoke the ADA.

■ Graehling's other federal argument is that the Village got rid of him without due process of law. He had a property interest in his job, so the Village could not have sacked him without notice and an opportunity for a hearing. An employee may decide whether to avail himself of that opportunity; one who resigns has decided not to use it and cannot complain. But if Williams had put a gun to Graehling's temple and told him to sign the letter of resignation, the Village could not avoid its obligation to provide a hearing; a coerced resignation, like a con-

structive discharge (a "resignation" after the employer has made things intolerable), is an independent wrong and does not justify withholding the opportunity for a hearing.

▪▪▪ Although Graehling did not file suit until more than two years after the resignation (and thus, on his view, the deprivation of an opportunity for a hearing), *Lawshe v. Simpson*, 16 F.3d 1475, 1478–80 (7th Cir. 1994), holds that the deprivation of "property" does not occur until the worker's final day of employment, which makes the suit timely. Does this imply that a fired employee *can't* raise a due process claim until he is out the door? Yet if he can raise it earlier, does this not imply that the claim accrues with the denial of a hearing? We have not been asked to revisit *Lawshe* and so do not pursue the point, for this is as far as Graehling gets—though not, as the district court thought, because the correction of the date shows that Graehling knew what he was doing. Whether the totality of the circumstances show that some act had been coerced is a mixed question of law and fact that cannot be determined on a motion under Rule 12(b)(6). As we keep stressing, the plaintiff is entitled to the benefit of all inferences—even to the benefit of hypothesized facts—at this early stage. The fatal flaw in Graehling's complaint is that one who elects between lawful alternatives cannot later cry "coercion." See *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir.1987). Williams did not point a gun at Graehling, did not threaten any other improper step. If the allegations of the complaint are to be believed, Williams gave Graehling two entirely proper options: resign or go home. Not "resign or be fired"; it was "resign or be sent home." Graehling's complaint tells us that he was in no position to choose intelligently because, on January 10, 1991, he "was in a severely weakened mental state ... due to the fact that he was suffering from bipolar depression, alcoholism, and post-traumatic stress syndrome". If that is so—as we must assume, given that these are Graehling's own words—then he had no business wearing a police uniform. A municipality must protect its citizens from persons "suffering from bi-polar depression, alcoholism, and post-traumatic stress syndrome"; it does not send such persons out to protect other citizens. An officer who has beaten a prisoner, destroyed gas stations during waking blackouts, and believes himself mentally incompetent to make important decisions is not a fit police officer. If the Village had put a weapon in Graehling's hands and returned him to patrol duty, and Graehling had injured a citizen, seven-figure punitive damages would have been hard to avoid. Perhaps the Village could have given Graehling a desk job, as it eventually did in consideration for the surrender of his badge, but Graehling does not argue that he had any such entitlement. Both halves of the alternative "resign or go home" therefore were lawful; that the Village offered Graehling almost three-years' salary, plus a pension, for choosing the "resign" option may have made resignation the obvious election, but the attractiveness of one option does not condemn the choice.

True enough, Graehling believes that the "go home" part of the offer should have been "go home with full pay," on the ground that his condition was job-related, rather than "go home without pay," the consequence of his depleted leave accounts. Staking out a debatable position on a personnel matter does not expose one to a charge of "coercion," however. If his condition entitled him to sick pay or other medical benefits, then this was a question on which Graehling could have demanded a hearing; the need to assert one's procedural rights does not make a choice coercive. *Alvarado v. Picur*, 859 F.2d 448, 453 (7th Cir.1988).

▪▪▪ By his own account, Graehling did not resign in a stupor and retract the resignation when he came to his senses. He resigned in January 1991 under an offer almost irresistibly attractive. For 32 months he reaped the benefits of that deal, receiving full pay for a make-work job and qualifying for a pension. Only when he had harvested the benefits did he seek to avoid the detriments. August 1993 was far too late to sing a new song—not at least, without tendering back to the Village the consideration he received. We held in *Fleming v. U.S. Postal Service*, 27 F.3d 259 (7th Cir.1994), that an employee who was compensated for giving up

a claim of discrimination must repay the employer to reinstate the claim. Graehling was paid handsomely to give up his right to a hearing, and any right to continue past his twentieth anniversary on the force. He has not offered to surrender that consideration if the court should determine that the Village could have fired him outright in January 1991. Although the Village has not pressed this argument, and we therefore do not base our decision on it, it lurks in the background and fortifies our conclusion that there is no point in ordering the district court to conduct further proceedings.

The allegations of the complaint show that Graehling cannot prevail on his federal claims. Graehling makes several arguments based on state law. The district court dismissed them without prejudice to their renewal in state court. This is the normal approach under the supplemental jurisdiction when the federal claims are resolved quickly, and Graehling remains free to take his state-law claims to state court for resolution.

AFFIRMED