Diane HUSKE, Plaintiff,

v.

**HONEYWELL INTERNATIONAL INC., Defendant.**

**No. CIV.A.03–2003–KHV.**

United States District Court,
D. Kansas.

Jan. 14, 2004.

Bradley Rob Finkeldei, Christopher F. Burger, Stevens & Brand, L.L.P., Lawrence, KS, for Plaintiff.

Nick Badgerow, Katherine Miller, Spencer, Fane, Britt & Browne, Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Diane Huske brings claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, against Honeywell International Inc. ("Honeywell"). The matter is before the Court on defendant's *Motion For Summary Judgment* (Doc. # 32) filed October 3, 2003. For reasons stated below, the Court sustains defendant's motion in part.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord* *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The non-moving party may not rest on her pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something

will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### *Factual Background*

The following facts are either undisputed or, where disputed, construed in the light most favorable to plaintiff.

Plaintiff worked for Honeywell from roughly December of 1971 to October 26, 2001. At the time of her termination, plaintiff worked as the Six Sigma Plus Process Improvement Lead at the so-called BRGA facility in Olathe, Kansas. Plaintiff was 47 years old at the time of her termination.

### I. Honeywell Corporate American Express Cards

In the mid–1990s, plaintiff applied for and received a Honeywell Corporate American Express Travel and Expense credit card. Plaintiff was eligible to apply for the card solely because of her employment with Honeywell. Although the card was a corporate account, plaintiff applied for the card based on her own credit rating and she received a card holder agreement. American Express sent statements to plaintiff's home and plaintiff was responsible for paying all balances. The corporate card holder agreement stated that the holder agreed to use the card for business purposes in accordance with company policy and was responsible for all charges to the account. The agreement did not state the consequence of an employee's failure to pay those charges, but it stated that the employee must abide by company policies.

Honeywell's travel and expense policy was available to all employees on the company intranet. The policy stated that (1) cards could not be used for personal or vacation travel or other personal expenses, (2) the card holder was responsible for paying the bill in full each month,[1] and (3) employees could be subject to disciplinary action for violating the policy.[2] Notwithstanding this policy, plaintiff assumed that she could use her card for personal expenses.

Honeywell's Travel and Expense Office does not take enforcement action for corporate credit card policies. Each facility, including the BRGA facility, is responsible for enforcement. Before October 26, 2001, the BRGA facility had terminated at least one employee for misusing his corporate credit card. Specifically, on January 17, 2000, it had terminated Thomas Greeley for using his corporate credit card to purchase trips, clothes, toys, gas, food and other personal items. The BRGA facility

1. Dori Canady, Honeywell's human resources manager, testified that "if someone gets into a delinquency status and never pays that bill, ... it's my understanding that Honeywell is then responsible to pay that." *Deposition Of Dori Canady* at 44:7–14, Exhibit 1 to *Reply In Support Of Honeywell's Motion For Summary Judgment* (Doc. # 40) filed November 19, 2003.

2. Honeywell's policy on travel and expenses stated: "Travelers who do not comply with this travel policy may be subject to delay or withholding of reimbursement and/or disci-

plinary action." *Global Travel Policy For The Employees Of Honeywell February 2002* at HH0042, Exhibit H to *Suggestions In Support Of Honeywell's Motion For Summary Judgment* (Doc. # 33) filed October 3, 2003; *see also Global Travel Policy For The Employees Of Honeywell December 14, 1999* Exhibit G at HH0406 (same). Although the policy stated that a violation could subject an employee to discipline, it did not require automatic termination. The company looked at each particular case to determine whether termination was warranted.

also terminated Claude Peoples for misusing his corporate credit card.[3]

## II. Plaintiff's Misuse Of The Card

As early as 1998, plaintiff used her card for personal purchases. By May of 2001, plaintiff had an outstanding balance of $1,641.21 for personal purchases in March and April of 2001 (including concert tickets and a vacation to Reno, Nevada). Plaintiff did not pay that bill because her husband was working only on and off and in June and July of 2001, his paychecks bounced. Plaintiff's father also died and plaintiff was providing financial support to her daughter, who was going through a divorce. By memorandum dated June 4, 2001, Honeywell notified plaintiff of the delinquency and suspended her travel privileges.[4] After she received that memorandum, plaintiff mailed American Express a payment of $897.84. American Express received the payment on June 25, 2001, but plaintiff still owed $808.94 plus delinquency charges.

On October 8, 2001, Cheryl McQueen at Honeywell's Travel and Expense Office sent plaintiff an email which informed her that she had a seriously delinquent balance of $870.26 on her account. After receiving that email, plaintiff made a payment of $808.94, which American Express received on October 11, 2001. On October 14, 2001, American Express cancelled plaintiff's account. On October 16, 2001, McQueen informed plaintiff that she still owed $61.32 on her account. Plaintiff sent $61.32 to American Express, which received the payment on October 22, 2001.

On October 22, 2001, Dori Canady, Honeywell's human resources manager, and Dan Putney, plaintiff's supervisor, met with plaintiff to discuss her use of the card. Four days later, on October 26, 2001, Honeywell terminated plaintiff's employment.

## III. Reduction In Force In November, 2001

In September of 2001, Honeywell notified the BRGA facility that it had to lay off 69 employees. In considering which employees to lay off, Honeywell identified which areas, based on future workload, it could reduce. It classified plaintiff and two other Six Sigma Plus Process Improvement Leads as a target group and decided to eliminate one position.[5] *Dori Canady Deposition* at 11–12, Exhibit 2 to *Plaintiff's Response To Defendant's Motion For Summary Judgment* (Doc. # 35) filed October 20, 2003. Honeywell then looked at which individual to target for reduction. Generally, in deciding whose position to eliminate, Honeywell used a matrix which listed skills and abilities needed for a particular job; rated the employees within the target group based on their skills and abilities; and laid off the employee or employees with the lowest scores. *Id.* at 17. Other than the reference to this matrix, the record does not reveal the specific criteria that the BRGA facility used to target employees for the reduction in force ("RIF"). Nor does it

---

3. The record does not reveal the when Honeywell terminated Peoples or give any details of his termination.

4. Honeywell learns of employee misuse of corporate credit cards when it conducts quarterly random audits or when an employee does not pay his or her account in full. Answers To Interrogatories ¶ 15, Exhibit I to *Suggestions In Support Of Honeywell's Motion*

*For Summary Judgment* (Doc. # 33). American Express notifies Honeywell of delinquent accounts on a monthly basis, and Honeywell sends monthly delinquency letters to employees who are 60 or 90 days past due. *Id.* ¶ 16.

5. The record does not indicate when Honeywell decided to eliminate one position.

explain how this process worked with regard to plaintiff's target group.

On a date which does not appear in the record, but before the meeting between plaintiff, Canady and Putney on October 22, Honeywell selected one of the leads in plaintiff's group—Evelyn Dennis—for the RIF.[6] Honeywell did not select plaintiff for the RIF, but because it had terminated her, it only had to lay off 68 employees.[7] Under Honeywell's severance pay plan, those 68 employees were eligible for severance benefits, including one week of pay for every year of employment plus accrued vacation pay. Only 67 of those employees received severance benefits.[8] If Honeywell had eliminated plaintiff's job instead of firing her, she would have been eligible for severance benefits.

Even if Honeywell had targeted plaintiff for the RIF, it still would have fired her for credit card abuse.

Plaintiff claims that (1) Honeywell terminated her to avoid paying severance benefits, in violation of ERISA, and (2) Honeywell discriminated against her on the basis of age by terminating her employment, in violation of the ADEA. *Pretrial Order* (Doc. # 36) at 8–9. Honeywell argues that it is entitled summary judgment on both claims. Specifically, Honeywell argues that (1) plaintiff cannot establish a prima facie case under ERISA and even if she could, its decisions were legitimate and nondiscriminatory; and (2) plaintiff cannot establish a prima facie case of age discrimination. Plaintiff concedes that she cannot establish a prima facie case of age discrimination. *Plaintiff's Response To Defendant's Motion For Summary Judgment* (Doc. # 35) at 6. The Court therefore sustains Honeywell's motion for summary judgment as to plaintiff's claim of age discrimination.

## Analysis

Plaintiff claims that Honeywell terminated her employment in violation of Section 510 of ERISA, 29 U.S.C. § 1140, to avoid paying severance benefits under its severance pay plan.

Congress enacted Section 510 to protect the employment status of plan participants against wrongful terminations to deprive them of the right to attain employee benefits. *See Dewitt v. Penn–Del Directory Corp.*, 106 F.3d 514 (3d Cir.1997) (Congress enacted Section 510 primarily to prevent unscrupulous employers from discharging or harassing employees to prevent them from obtaining vested pension rights); *Andes v. Ford Motor Co.*, 70 F.3d 1332 (D.C.Cir.1995) (same); *West v. Butler*, 621 F.2d 240 (6th Cir.1980) (same); *Winkel v. Kennecott Holdings Corp.*, 48 F.Supp.2d 1294, 1302 (D.Utah 1999) (same); *Place v. Abbott Labs., Inc.*, 938 F.Supp. 1379 (N.D.Ill.1996) (same); *Humes v. McDonnell Douglas Corp.*, 922 F.Supp. 229 (E.D.Mo.1996) (same). Specifically, Section 510 provides in relevant part that "[i]t shall be unlawful for any person to discharge . . . a participant or

---

**6.** The managers of each affected department and the human resources department provided input for deciding which employees to target for the RIF in November of 2001. After consulting with the Honeywell legal department, Marc Szczerba, the vice president and general manager of the BRGA facility, made the final decision as to who was affected by the RIF. Answers To Interrogatories ¶¶ 9–10.

**7.** The record does not indicate when or precisely why Honeywell decided that with plaintiff gone, it would only eliminate 68 positions.

**8.** Employees received severance benefits only if they signed a release form. One employee, Emmett Edwards, refused to sign such a release and did not receive severance benefits. Answers To Interrogatories ¶ 13.

beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140.

In determining whether a plaintiff raises a triable issue of fact under Section 510, the Court uses the three-step burden shifting approach from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *E.g., Winkel,* 48 F.Supp.2d at 1302; *Herring v. Oak Park Bank,* 963 F.Supp. 1558, 1569 (D.Kan. 1997), and cases cited therein. Applying this framework, plaintiff must first establish a prima facie case that Honeywell acted with specific intent to interfere with her rights under the severance pay plan. *See Gavalik v. Cont'l Can Co.,* 812 F.2d 834, 852 (3d Cir.) *cert. denied* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). If plaintiff succeeds, Honeywell must produce a legitimate, nondiscriminatory reason for terminating plaintiff. If Honeywell meets that burden, plaintiff carries the ultimate burden of proving either that it was more likely that Honeywell terminated her to interfere with her rights under the severance pay plan or that its reason was pretextual. *Id.* at 853.

## I. Prima Facie Case

■ Plaintiff must first establish a prima facie case that Honeywell specifically intended to interfere with her entitlements under the severance pay plan. *Gavalik,* 812 F.2d at 852. To do so, plaintiff must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which she might have become entitled. *See id.; see also Newell v. KMart Corp.,* No. CIV.A. 97–2258–KHV, 1998 WL 230966, at *4 (D.Kan. Apr.6, 1998); *Torre v. Federated Mut. Ins. Co.,* 862 F.Supp. 299, 304 (D.Kan.1994) *aff'd* 124 F.3d 218, 1997 WL 527604 (10th Cir.1997); *Zimmer-*

*man v. Sloss Equip., Inc.,* 835 F.Supp. 1283, 1288 (D.Kan.1993), *aff'd* 72 F.3d 822 (10th Cir.1995).

Nothing in the record suggests that Honeywell's severance pay plan is an "employee benefit plan" under ERISA, 29 U.S.C. § 1002(1), *e.g., Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 6–7, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), and *Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254, 256 (8th Cir.1994). Honeywell's motion *assumes* that its plan is an ERISA plan, *Suggestions In Support Of Honeywell's Motion For Summary Judgment* (Doc. # 33) at 9 n. 1, and plaintiff does not dispute this assumption. The Court therefore assumes that it deals with an ERISA plan. It preliminarily notes that the record does not include a copy of either the severance pay plan or Honeywell's RIF policy.

Honeywell argues that plaintiff cannot establish a prima facie case because (1) she was not a participant in the severance pay plan because it did not target her in the RIF in November of 2001; (2) she was not entitled to benefits under the severance pay plan; and (3) Honeywell had no intent to interfere with her employee benefits. *Suggestions In Support Of Honeywell's Motion For Summary Judgment* (Doc. # 33) at 9. Plaintiff responds that she was potentially eligible for the severance pay plan, that she was therefore potentially a participant in an ERISA plan, and that the timing of her termination raises an inference that Honeywell terminated her to avoid paying her severance benefits. *Plaintiff's Response To Defendant's Motion For Summary Judgment* (Doc. # 35) at 7–10.

### A. Whether Plaintiff Was A Participant Or Beneficiary Of A Welfare Plan Under ERISA

Under 29 U.S.C. § 1002(7), a participant of an ERISA welfare plan is an "employee

or former employee ... who is or may be eligible to receive a benefit of any type from an employee benefit plan." In *Zimmerman,* the court held that plaintiff need only establish that she had the potential of receiving benefits under the plan at the time when defendant took action with the specific intent of denying her those benefits. 835 F.Supp. at 1289.

Honeywell is not entitled to summary judgment on its argument that plaintiff was not a plan participant because it did not target her for the RIF. On summary judgment, the moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Hicks,* 942 F.2d at 743. The burden shifts to the non-moving party to demonstrate that genuine issues remain for trial only after the moving party meets its burden. *See Applied Genetics,* 912 F.2d at 1241; *see also Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348; *Bacchus Indus.,* 939 F.2d at 891. The record does not include a copy of Honeywell's severance pay plan or explain who was potentially eligible for benefits, when those benefits vested, or what conditions (such as execution of a release) attached to the right to benefits. Also, the record does not include or clearly explain the Honeywell RIF policy or the chronology of events. Therefore the Court cannot determine (1) when Honeywell made the decision to terminate plaintiff's employment; (2) when Honeywell decided to eliminate one employee from plaintiff's group of three Six Sigma Plus Process Improvement Leads; (3) when Honeywell decided to eliminate Evelyn Dennis' position; (4) which employees participated in Honeywell's severance pay plan; (5) whether, and when, any employees had vested rights under the plan; and (6) the rights to which plan participants were entitled under the plan. Without such information, it begs the question to say that plaintiff was not a plan participant because Honeywell did not target her for the RIF. For all that the record reveals, all employees were plan participants, with benefits flowing to only those employees whose positions were eliminated and who executed releases. Even though plaintiff's position was eliminated and she may not have been entitled to benefits, the Court cannot conclusively find that she was not a plan participant because it does not know the terms of the plan.

## B. Whether Plaintiff Would Have Been Entitled To Benefits Under The Plan

As stated above, Honeywell argues that because plaintiff was not a plan participant, she was not entitled to severance benefits. As noted, the terms of the plan and the chronology of events are unclear. To prevail on her claim, however, plaintiff is not required to show entitlement to benefits. 29 U.S.C. § 1140 (employer may not interfere with any right to which participant *may* become entitled); *Phelps v. Field Real Estate Co.,* 991 F.2d 645, 649 (10th Cir.1993). Honeywell has not conclusively shown that plaintiff was ineligible for benefits under the plan.

## C. Motivation Of Honeywell

To establish a prima facie case, as stated above, plaintiff must demonstrate that Honeywell terminated her employment for the purpose of interfering with the attainment of any right to which she might have become entitled. Honeywell argues that even if plaintiff was potentially a plan participant, plaintiff has not established a prima facie case because it had no intent to interfere with her employee benefits. *Suggestions In Support Of Honeywell's Motion For Summary Judgment* (Doc. # 33) at 9. Plaintiff responds that Honeywell intended to lay off 69 employees and

that because it terminated her employment less than two weeks before the RIF in November, 2001, it only laid off 68 employees. Plaintiff therefore argues that the timing raises an inference that Honeywell terminated her employment to avoid paying her severance benefits. *Plaintiff's Response* (Doc. # 35) at 9–10.

To recover under Section 510, plaintiff must prove by a preponderance of the evidence that Honeywell subjected her to an adverse employment action "motivated by an intent to interfere with employee benefits protected by ERISA." *Phelps,* 991 F.2d at 649 (citations omitted). Plaintiff is not required to show that Honeywell's sole motivation was to interfere with employee benefits; she need only show that it was a motivating factor. *Garratt v. Walker,* 164 F.3d 1249, 1256 (10th Cir. 1998). "An employee may rely upon direct or indirect proof." *Id.* Although plaintiff may use circumstantial evidence to prove her claim, plaintiff's evidence must be specific and must allow a reasonable factfinder to find that one of Honeywell's motives was to violate ERISA. *See Dodson v. New York Life Ins. Co.,* No. 90–4057, 1991 WL 180090, at *2 (10th Cir. Sept.10, 1991) (citing *Gavalik,* 812 F.2d at 851 and *Phelps,* 991 F.2d at 649) (citing *Gavalik* and *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir.1988)); *see also Card v. Hercules Inc.,* No. 92–4169, 1993 WL 351337 at *3 (10th Cir. Aug.19, 1993) (plaintiff must show "specific intent to interfere"). Accordingly, the question is whether Honeywell terminated plaintiff "at least in part" to deny her severance benefits. *Phelps,* 991 F.2d at 649.

Terminating an employee within short proximity of vesting of a welfare plan raises an inference of intentional activity. *Zimmerman,* 835 F.Supp. at 1288 (citing *Folz v. Marriott Corp.,* 594 F.Supp. 1007, 1014 (W.D.Mo.1984) and *Humphreys v.*

*Bellaire Corp.,* 966 F.2d 1037, 1043–44 (6th Cir.1992) (citations omitted)); *see also Dister,* 859 F.2d at 1115 (three months enough for inference); *Babich v. Unisys Corp.,* 842 F.Supp. 1343, 1355 (D.Kan.1994) (19 months enough for inference). Terminating plaintiff's employment less than two weeks before the RIF in November of 2001 raises an inference of intentional, prohibited activity. Plaintiff has therefore established a prima facie case that Honeywell acted with specific intent to interfere with her rights under the severance pay plan.

## II. Legitimate Nondiscriminatory Reason

■ The burden shifts to Honeywell to articulate a legitimate, nondiscriminatory reason for terminating plaintiff. *See Gavalik,* 812 F.2d at 853 (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). Honeywell asserts that it terminated plaintiff's employment because she misused her card in violation of established company policy and not to deny her severance benefits, and that even if it had targeted her for the RIF in November of 2001, it would have terminated her employment for misuse of the card. Honeywell has articulated a legitimate nondiscriminatory reason for terminating plaintiff's employment.

## III. Pretext

■ Because Honeywell has articulated a legitimate, nondiscriminatory explanation for terminating plaintiff, the prima facie presumption of interference with ERISA benefits "drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citations omitted). The burden shifts to plaintiff to demonstrate that Honeywell terminated her employment for the purpose of interfering with her severance pay. To meet this burden, plaintiff must estab-

lish that a genuine issue of material fact remains whether "the proffered reason was not the true reason for the employment decision." *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 558 (10th Cir.1996). Plaintiff may show pretext by establishing either that a discriminatory reason more likely motivated Honeywell or that its explanations are unworthy of credence. *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994).

Honeywell argues that it is entitled to summary judgment on this issue because (1) plaintiff made personal credit card charges in violation of company policy; (2) Honeywell consistently enforced this policy (*i.e.* it terminated Greeley and Peoples for misusing their corporate credit cards); (3) Honeywell did not target plaintiff for the RIF and she was therefore ineligible to receive benefits; and (4) even if Honeywell had targeted plaintiff for the RIF, it still would have terminated her for misusing her card. Plaintiff admits that Honeywell did not target her for the RIF, that she used the card for personal purchases and that the account became delinquent. She argues that Honeywell's reasons are nonetheless pretextual because (1) plaintiff had used her card for personal purchases since 1998; (2) Honeywell's letter of June 4, 2001 asked plaintiff to pay the delinquency but did not mention the possibility of disciplinary action; (3) Honeywell did not discipline plaintiff until after the RIF had been announced; and (4) by terminating plaintiff, Honeywell saved money because it paid severance to 68 rather than 69 employees.

Viewing the record in the light most favorable to plaintiff, it appears that she had used her card for personal purchases—in violation of company policy— since 1998. Honeywell took no action with regard to multiple years of such misuse. Further, while Honeywell looks at each particular case to determine whether termination is warranted, the record does not indicate what criteria it uses or when termination is warranted. Honeywell learned that plaintiff's account was delinquent no later than June 4, 2001. It did not notify the BRGA facility of the delinquency until October 8, 2001, however, and it did not discipline plaintiff until right before the RIF. Genuine issue of material fact therefore remain. The sole fact that Honeywell probably saved some money does not establish pretext. *Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1044 (6th Cir.1992); *Nixon v. Celotex Corp.,* 693 F.Supp. 547, 555 (W.D.Mich.1988) (plaintiff must prove more than monetary savings for employer); *see also Morabito v. Master Builders, Inc.,* No. 96–3898, 1997 WL 668955, *3 (6th Cir. Oct.27, 1997) (citing *Humphreys,* 966 F.2d at 1044); *Potts v. Nat'l Healthcare, L.P.,* 961 F.Supp. 1136, 1143 (M.D.Tenn. 1996) (citing *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 238 (4th Cir. 1991)). Nonetheless, on this record, a jury could disbelieve Honeywell's articulated reason for its employment decision and believe that it terminated plaintiff to deny her an employment benefit. *Hicks,* 509 U.S. at 520, 113 S.Ct. 2742.

**IT IS THEREFORE ORDERED** that defendant's *Motion For Summary Judgment* (Doc. # 32) filed October 3, 2003 be and hereby is **SUSTAINED** as to plaintiff's claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* and **OVERRULED** as to plaintiff's claim under Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.