Richard KENNEDY, Plaintiff–Appellant,

v.

CHEMICAL WASTE MANAGEMENT, INCORPORATED, et al., Defendants–Appellees.

Nos. 95–2987, 95–3221.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1996.

Decided March 19, 1996.

Rehearing Denied April 22, 1996.

R. Edward Wilhoite, Jr. (argued), Frederick M. Lerner, Lerner & Wilhoite, Chicago, IL, for Plaintiff-Appellant.

Joan E. Gale (argued), Keri B. Goldstein, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendants-Appellees.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

POSNER, Chief Judge.

This appeal concerns the time limits for suing under the Americans With Disabilities Act, 42 U.S.C. §§ 12101 et seq. For twenty years ending in 1988, the plaintiff, Richard Kennedy, drove a truck for Chemical Waste Management and was a member of the Teamsters local that represented Chemical Waste Management's truck drivers. In that year he was diagnosed with multiple sclerosis and at his doctor's recommendation was removed from his driver's job. Chemical Waste Management's trucks are tanker trucks containing volatile chemicals, and the drivers are required to wear protective clothing. The doctor believed that the stress of driving a lethal cargo, combined with the discomfort of the protective clothing, would

aggravate Kennedy's condition. The company reassigned Kennedy to a janitorial position, in which he was not represented by the union.

Four years later the doctor changed his mind and decided that Kennedy could drive a tanker truck with minor modifications in his work routine. The company restored Kennedy to his truck driver's position but did not restore the twenty years' seniority that he had accrued in that position before being removed from it in 1988. Instead it treated him as a new employee for purposes of seniority under the collective bargaining agreement between the company and the union. The company did not act in secret. It told Kennedy that he was not being given back his old seniority, and he does not claim any misunderstanding.

In 1994, two years after being restored to his driver's position, Kennedy was laid off along with a number of other truck drivers as part of a reduction in Chemical Waste Management's work force. He would not have been laid off had he had 22 years of seniority rather than two. He brought this suit the following year, seeking the restoration of his job on the ground that had it not been for his disability he would have had enough seniority to avoid being laid off. The suit was filed within 300 days after the layoff and that is indeed the limitations period under the Americans With Disabilities Act. See 42 U.S.C. § 12117, incorporating 42 U.S.C. § 2000e–5(e) (the Title VII limitations period). But the defendants argue, and the district judge in granting their motion to dismiss the suit agreed, that the plaintiff's claim arose earlier, in 1992, when the employer failed to restore the plaintiff's previous seniority, and so the suit is untimely.

■ The employment discrimination laws, including the Americans With Disabilities Act, do not protect employees just against losing their jobs. The laws protect employees against any significant job discrimination, including discrimination in employee benefits. See, e.g., 42 U.S.C. §§ 2000e–2(a), 12112(a). Seniority is an important employee benefit because, like academic tenure, which it resembles, it provides job protection. Its deprivation is an injury that sets the statute of limitations running, *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), even though the injury is contingent rather than actual unless and until job protection is needed. See also *Graehling v. Village of Lombard,* 58 F.3d 295, 296–97 (7th Cir.1995); *Hamilton v. Komatsu Dresser Industries, Inc.,* 964 F.2d 600, 604 (7th Cir.1992).

It is true that in both *Ricks* and *Graehling* the plaintiff was told not only that he was losing his job protection now but that he was going to lose his job as the inevitable though not immediate sequel to the withdrawal of that protection, while in this case the loss of seniority was a probabilistic rather than certain prelude to the loss against which seniority was a barrier. But we do not think this should matter. See *Hamilton v. Komatsu Dresser Industries, Inc., supra,* 964 F.2d at 604. Many valuable job benefits are contingent. No one would doubt that taking away an employee's health insurance because of his race was a violation of Title VII of which the employee could complain the moment it was taken away, even though until he got sick and needed health insurance he would not have suffered a "real" injury. Ditto with unemployment insurance and with term life insurance that expires when the employee retires. Of course there are employment discriminations so slight or equivocal that no reasonable person would think that a suit could be founded on them, and in that case the employee can wait until their significance becomes clear. *Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164, 1166–1167 (7th Cir.1996). Loss of twenty years' seniority cannot be viewed in that light.

The plaintiff contests this conclusion on two grounds. One is that the Americans With Disabilities Act, unlike Title VII, imposes on employers a duty to "accommodate" a disabled employee or applicant for employment, 42 U.S.C. § 12112(b)(5)(A), which means that an employer may have to take a positive step to make it possible for the person to work. *Vande Zande v. Wisconsin Dept. of Administration,* 44 F.3d 538, 542–43 (7th Cir.1995). Kennedy argues that the positive step would have been for Chemical

Waste Management in 1994 to retain him despite his inadequate seniority, since he would have had enough seniority had he not been disabled in 1988 and as a result lost 20 years of accrued seniority. The practical objection to this argument is that if accepted it would as a practical matter eliminate the statute of limitations in ADA cases. An employee discharged in 1992 could sue in 2002 after unsuccessfully demanding reinstatement, on the ground that he had been denied an accommodation. The proper analogy is to cases in which an employee seeks to extend Title VII's statute of limitations (incorporated by reference in the ADA) by reapplying for the job from which he claims to have been unlawfully fired, even though it is plain that reapplication is not invited. This ploy—which resembles trying to take an untimely appeal by first filing a Rule 60(b) motion to set aside the judgment and then appealing from the denial of the motion, *North American Telecommunications Ass'n v. FCC,* 772 F.2d 1282, 1286 (7th Cir.1985)—has not succeeded in Title VII cases. *Webb v. Indiana National Bank,* 931 F.2d 434, 436–37 (7th Cir.1991); *Dugan v. Ball State University,* 815 F.2d 1132, 1135 (7th Cir.1987); *Burnam v. Amoco Container Co.,* 755 F.2d 893, 894 (11th Cir.1985) (per curiam). It should not succeed in ADA cases either. *Graehling v. Village of Lombard, supra,* 58 F.3d at 296–97.

Kennedy's second argument takes off from the fact that Title VII as amended in 1991 allows an employee "injured by the application of the [employer's] seniority system" to measure the period of limitations from the date of that application, which in this case would be 1994, when Kennedy was laid off. 42 U.S.C. § 2000e–5(e)(2). This provision, Kennedy contends, was incorporated into the ADA along with the rest of Title VII's provisions regarding limitations periods. But the provision is applicable only to "a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter [i.e., Title VII]," and Kennedy does not claim that the defendants' seniority system discriminates against disabled persons or anybody else. He argues, however, that this qualification in Title VII—the limitation to intentionally discriminatory

schemes—was not taken into the ADA. Title VII contains an exemption for bona fide seniority systems. 42 U.S.C. § 2000e–2(h). The purpose is to prevent the use of the "disparate impact" approach to challenge seniority systems, and thus to confine Title VII challenges to seniority systems that intentionally discriminate on one or more of the grounds forbidden by the statute. *Pullman–Standard v. Swint,* 456 U.S. 273, 276–77, 102 S.Ct. 1781, 1783–84, 72 L.Ed.2d 66 (1982); *Banas v. American Airlines,* 969 F.2d 477, 481 n. 5 (7th Cir.1992). The qualification limiting the new statute of limitations to *intentionally* discriminatory seniority systems is merely a recognition that those are the only systems that can be challenged under Title VII. There is, the argument continues, no exemption in the ADA for bona fide seniority systems. Therefore disparate impact must be a basis for challenging seniority systems under the ADA (an issue, however, on which there is as yet no appellate ruling), and so the qualifier *"intentionally* discriminatory" would have no function in the ADA and so should be deemed not to have been brought over into it.

This is an ingenious argument, but we think it more likely that *no part* of the provision of Title VII relating to an extended period for challenging a loss of (or due to) seniority was taken into the ADA. For the provision, designed to undo the result in *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), a Title VII case based on an interpretation of the provision of that statute relating to seniority, see *id.* at 904–05, 109 S.Ct. at 2264–65, states very plainly that it is applicable only to seniority systems that intentionally violate "this subchapter," that is, Title VII. But if we are wrong and the provision *was* taken into the ADA, with the referent of "this subchapter" changed from "Title VII" to "ADA," then we think it was incorporated as a whole and hence is limited to intentionally discriminatory seniority systems. Kennedy's interpretation is plausible but no more, and it requires a stronger showing to convince us to disregard the language of the ADA, which in incorporating the limitations provisions of Title VII incorporated the qual-

ification "intentionally discriminatory"—unless as we think more likely the reference to "in violation of this subchapter" confines the operation of the provision to Title VII.

■ But Kennedy should not feel that he has been robbed of a good suit by a technicality, and not only because statutes of limitations are not technicalities but serve important social purposes. *Galloway v. General Motors Service Parts Operations, supra,* 78 F.3d at 1165, and cases cited there. He has no case. There is nothing discriminatory about Chemical Waste Management's seniority system. If you are removed from a union position, for whatever reason, you lose the seniority accrued in that position; seniority does not vest. Moreover, Kennedy was not removed from his truck driver's position in 1988 in violation of the ADA; the ADA hadn't been enacted yet (it was enacted in 1990 and became effective in 1992). Nor was there anything discriminatory about his removal because of multiple sclerosis, for he does not question either the doctor's judgment that he could not continue in the job or the bona fides of Chemical Waste Management in acting on that judgment.

The notion of reasonable accommodation cannot be stretched to the point of requiring the provision of superseniority to disabled employees who lost their seniority on account of disability years, perhaps decades, before the Americans With Disabilities Act was passed. Suppose Kennedy had worked for Chemical Waste Management from 1930 to 1940, and been laid off in 1940 because he was disabled. If he recovered and was rehired in 1980, and then laid off in 1995, we do not think any court would listen to his argument that the company was obliged to restore to him the 10 years of seniority that he had accrued between 1930 and 1940, any more than it would listen to an argument that he should be given a bonus that he had been denied in 1932 because of his disability.

AFFIRMED.