Suzanne **WEBSTER**, Plaintiff–Appellant,

v.

**METHODIST OCCUPATIONAL HEALTH CENTERS, INC.,** Defendant–Appellee.

No. 97–1049.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1997.

Decided April 23, 1998.

James W. Myers, III (argued), Valparaiso, IN, for Plaintiff–Appellant.

Stephen J. Peters, Ronald Smith (argued), Kathleen I. Lee (argued), Stewart & Irwin, Indianapolis, IN, for Defendant–Appellee.

Before FLAUM, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

From November 1990 until July 1993, Suzanne Webster worked as a nurse for Methodist Occupational Health Centers, Inc. (MOHC). This case reaches us because MOHC terminated her employment after she suffered a stroke, on the ground that aftereffects of the stroke left her unqualified to perform her job. She sued under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), claiming that MOHC had discriminated against her on the basis of her disability. The district court granted summary judgment for MOHC, and we affirm.

As an employee of MOHC, Webster worked as a contract industrial nurse at the Ford Motor Company from January 1991 to July 1993, when she suffered a stroke. The stroke necessitated a leave of absence. In September of 1993, she began rehabilitation therapy with the Center for Neurological Rehabilitation (CNR). Although she completed her treatment at CNR in February 1994, her discharge record reflected continuing concerns about her ability to sustain attention and concentration, her visual and spatial skills, and a variety of other problems. Accordingly, Dr. Leslie Schutz, her rehabilitation physician, refused to grant her a release to return to work at Ford. On January 18, 1994, shortly before Dr. Schutz issued her report, MOHC and CNR conducted a clinical work trial for Webster. Based on that trial, the MOHC staff concluded that Webster could "probably function effectively in an environment where she had support and the resources of other staff members. Perhaps re-entering into a clinical situation would be a better option [than a return to Ford]."

Relying on Webster's rehabilitation record and the results of her clinical work trial, MOHC concluded that it could not risk allowing Webster to hold a nursing position without the assistance of a full-time nurse-escort who could guide her or take over for her if her disability prevented her from taking proper care of a patient. This, MOHC concluded, would be prohibitively expensive, because it meant that it could not reinstate Webster without effectively paying a double salary for her. Although MOHC was willing to explore the possibility of assigning Webster to a non-nursing position, Webster rejected any suggestion that she return to work in anything but a nursing capacity.

■ The district court rested its summary judgment for MOHC on two grounds: first, it concluded that Webster was not a "qualified individual with a disability" for purposes of the ADA, and second, it found that MOHC had satisfied its responsibility to offer her a reasonable accommodation. The questions are related, since the ADA defines a "qualified individual with a disability" as someone who can perform the duties of the job in question either with or without reasonable accommodation. See 42 U.S.C. § 12111(8); *DePaoli v. Abbott Laboratories,* 140 F.3d 668, 673–74 (7th Cir.1998). As we noted in *Dalton v. Subaru–Isuzu Automotive, Inc.,* 141 F.3d 667, 676 (7th Cir. Mar. 26, 1998), the employer is entitled to define the job in question, in terms of both its essential functions and the qualifications required for it.

■ Here, one of MOHC's requirements for the position of industrial nurse was the ability to work alone and unsupervised. After her stroke and rehabilitation therapy, Webster was unable to meet that requirement, either for work on the night shift (which apparently involved more time alone) or for work on the day shift (which was the accommodation she wanted, precisely because it meant that she would be working under closer supervision). MOHC would not have hired another industrial nurse who had not suffered a stroke but who had Webster's symptoms—"decreased ability to sustain attention and concentration at times, as well as mild decreases in visual spatial skills and scanning and occasional impulsivity"—which is sufficient in itself to dispose of a discrimination claim, see *Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1168–69 (7th Cir.1998), so long as the underlying job requirements are non-discriminatory, *Dalton,* 141 F.3d at 679. Even though Webster takes issue with some ancillary points, she does not dispute the critical fact that she was no longer able to perform the functions of a nurse without a significant degree of supervision. This is enough to show that, at least without accommodation, she was not a qualified person with a disability.

■ No accommodation that Webster proposed for a nursing position offered a way for MOHC to employ her *without supervision.* Instead, she urged that she should be assigned to the day shift at Ford, where it would be easier to have someone looking over her shoulder most of the time. Webster refused to consider non-nursing positions, and she even refused to contemplate a clinical nursing position until after she was terminated. MOHC's Appendix at 99, 211, 212, 215. Rather than participate in the "interactive process" between employer and employee required under the ADA, see *Dalton,* 141 F.3d at 676–77, Webster chose the position that was most to her liking—industrial nurse on the day shift at Ford—and insisted that MOHC place her there and nowhere else, despite her inability to fulfill MOHC's reasonable requirement that its industrial nurses be able to work without supervision. Under these circumstances, MOHC did not violate its duty to consider transferring her to another job. See *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir.1996). *Cf. Dalton,* 141 F.3d at 677–80. Although Webster now makes some suggestion that she might have considered other work, this offer comes too late in the day to hold MOHC liable for failing to take her up on it. An employee cannot refuse reasonable accommodations during the interactive process the statute contemplates, and then after dismissal suggest something different and claim that the employer still has a duty to consider further accommodations. *Cf. Huels v. Exxon Coal USA,* Inc., 121 F.3d 1047, 1049 (7th Cir.1997); *Kennedy v. Chemical*

*Waste Management, Inc.,* 79 F.3d 49, 50–51 (7th Cir.1996). Otherwise, there would be no statute of limitations on ADA claims. *Id.* at 51. We therefore do not rely on anything MOHC may have done after Webster's termination either to support or to criticize its actions.

Last, we note that MOHC has asked for sanctions against Webster under 28 U.S.C. § 1927, Fed. R.App. P. 38, and the court's power to punish violations of Circuit Rules 28(d) and 30. We decline the invitation. Even though we have found Webster's appeal to be without merit, it has not crossed the line of objective unreasonableness and vexatiousness under § 1927, or frivolousness under Rule 38, necessary to support sanctions. Furthermore, Webster's statement of facts, while not perfect, was not so infected with comment or argument as to justify sanctions. Her appendix, as MOHC concedes, included the minimum required by Circuit Rule 30(a), which means that nothing sanctionable occurred there either. We therefore AFFIRM the district court's judgment in favor of MOHC.