07-1386-cv
Alleyne v. American Airlines

# UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Submitted: November 10, 2008                    Decided: November 17, 2008)

Docket No. 07-1386-cv

_____

RUPERT ALLEYNE,

*Plaintiff-Appellant,*

—v.—

AMERICAN AIRLINES, INC., also known as AMERICAN EAGLE,

*Defendant-Appellee,*

LOCAL 501 OF THE TRANSPORT WORKERS UNION OF AMERICA,

*Defendant.*

_____

B e f o r e :

SOTOMAYOR, KATZMANN AND HALL

*Circuit Judges.*

_____

Appeal from an April 4, 2007 judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*), dismissing the complaint. Because we agree with the district court that appellant's claim of employment discrimination accrued for statute of limitations purposes on the date when appellant learned of his allegedly discriminatory loss of seniority, and not on the subsequent date of the neutral termination of his employment, the judgment of the district court is AFFIRMED.

_____

ALAN E. WOLIN, Wolin & Wolin Esqs., Jericho, NY, *for Plaintiff-Appellant.*

RENE M. JOHNSON, Morgan, Lewis & Bockius LLP, New York, NY, *for Defendant-Appellee.*

_____

PER CURIAM

Appellant Rupert Alleyne appeals an April 4, 2007 judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*), dismissing his discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–17 (2006) ("Title VII"). The district court held that Alleyne had failed to file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful employment action, as required by 42 U.S.C. § 2000e-5(e)(1). As a result, the district court dismissed appellant's Title VII claim and declined to exercise supplemental jurisdiction over appellant's other claim, which was asserted under New York State Executive Law §§ 296–97. On appeal, Alleyne contends that the district court erred in determining the date on which the statute of limitations for his Title VII claim began. We disagree and affirm the judgment of the district court.

## BACKGROUND

Appellant Alleyne, an African-American, held the position of service clerk with appellee American Airlines, Inc. ("American Airlines") from 1994 to 2003. Alleyne was also a member of Local 501 of the Transport Workers Union of America ("Transport Union"). Under the terms of a collective bargaining agreement between American Airlines and the Transport Union, "[a]n employee who accepts a temporary or acting assignment with the Company as a manager, supervisor or any special assignment outside the scope of this Agreement will not exceed a period of three hundred and twenty (320) hours for all time worked in any calendar year." An employee who worked in excess of 320 hours forfeited "all Occupational seniority."

2

With American Airlines' permission, Alleyne worked for 323 hours as a Management Personnel Replacement for the company during the first two months of 2002. His seniority was subsequently forfeited around March 2002. Because of a reduction in workforce and as a consequence of his loss of seniority, Alleyne was advised in June 2003 that his employment would be terminated. The forfeiture of seniority also affected the likelihood that Alleyne would be rehired by American Airlines. Alleyne asked the Transport Union to dispute American Airlines' actions under the collective bargaining agreement, but the Transport Union refused.

In March 2004, approximately two years after his seniority was forfeited, Alleyne filed a claim with the EEOC, which later granted permission to sue. Alleyne asserts here that American Airlines and the Transport Union acted together to revoke his seniority so that he would be laid off because of his race. He contends that Caucasian and Latino employees who worked for comparable periods as Management Personnel Replacements were not required to forfeit their seniority and therefore did not lose their jobs.

## DISCUSSION

The issue before this Court is whether Alleyne's complaint with the EEOC was filed within 300 days of American Airlines' "alleged unlawful employment practice," as required under 42 U.S.C. § 2000e-5(e)(1). This inquiry, in turn, requires us to identify the unlawful employment practice at issue. American Airlines contends that the relevant employment action was the loss of Alleyne's occupational seniority in March 2002, while Alleyne argues that the pertinent conduct included the termination of his employment in June 2003. If the unlawful employment action consisted only of Alleyne's loss of seniority, then Alleyne filed his claim

3

with the EEOC too late.  If the discriminatory act included Alleyne's discharge, then Alleyne's claim was timely filed.

We hold that Alleyne's filing with the EEOC was not timely because the only alleged discriminatory act was Alleyne's loss of seniority.  This conclusion is compelled by *Delaware State College v. Ricks*, 449 U.S. 250 (1980), in which a college professor asserted a claim under Title VII after he was denied tenure and then discharged one year later.  *Id*. at 252–54.  The complaint alleged that the denial of tenure was discriminatory but failed to identify any "alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of his employment."  *Id*. at 257.  While acknowledging that the termination of employment may have been a "delayed, but inevitable, consequence of the denial of tenure," the Court held that the "emphasis is not upon the effects of earlier employment decisions; rather, it is upon whether any present violation exists."  *Id*. at 257–58 (internal quotation marks, brackets and italics omitted).  Accordingly, the Court held that the limitations period commenced when the college communicated to the professor its decision to deny tenure as opposed to when the college terminated his employment.  *Id*. at 261–62; *see United Air Lines, Inc. v. Evans*, 431 U.S. 553, 560 (1977) (holding that an allegedly discriminatory practice that was no longer actionable could not form the predicate of a challenge to a neutral seniority system).

Like the complaint in *Ricks*, Alleyne's complaint fails to allege that his termination of employment was discriminatory.  *See* 449 U.S. at 257.  Instead, it alleges that a discriminatory loss of seniority resulted in a discharge that indiscriminately affected those without seniority.  According to the complaint, Caucasian and Latino employees who worked as Management

4

Personnel Replacement for as long as Alleyne "did not lose their seniority and were not laid off." Because Alleyne concedes that "[h]ad [he] not allegedly exceeded 320 hours, he would not have been laid off," the alleged discrimination arose from his loss of seniority, not his termination of employment. Although Alleyne broadly alleges that American Airlines and the Transport Union manipulated the collective bargaining agreement to ensure his dismissal because of his race, he does not allege that any other employee who lacked seniority was treated differently than he was at the time of his termination.[1]

Alleyne argues that *Ricks* is distinguishable because, in that case, the discriminatory denial of tenure and the decision to terminate employment were communicated simultaneously to the plaintiff. *See* 449 U.S. at 252–53. Accordingly, the plaintiff in *Ricks* was on notice, at the same time, of both the discriminatory act and its consequences. *Id*. In contrast, Alleyne suggests that he was not necessarily aware of the effects of his loss of seniority. He contends that he could have remained employed even after the loss of seniority and that, in fact, he was not notified of his discharge until approximately nine months after his loss of seniority.

We do not find this distinction to be relevant. Alleyne does not, and reasonably cannot, downplay the significance of the loss of approximately nine years of seniority. "Seniority is an important employee benefit because . . . it provides job protection. Its deprivation is an injury

---

[1] Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination" in order to survive a motion to dismiss, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002), a generous reading of Alleyne's complaint does not uncover any suggestion that he was treated differently from other non-senior employees because of his race, or any allegation of discrimination with respect to his termination that is independent of his earlier loss of seniority.

that sets the statute of limitations running even though the injury is contingent rather than actual unless and until job protection is needed." *Kennedy v. Chem. Waste Mgmt., Inc.*, 79 F.3d 49, 50 (7th Cir. 1996) (internal citation omitted). Thus, in order to have notice of his claim under Title VII, Alleyne need not have forecast every problem attending his loss of seniority. "[T]he proper focus [for calculating the limitations period] is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Ricks,* 449 U.S. at 258 (internal quotation marks and emphasis omitted); *see also Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000) ("It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct.").[2]

## CONCLUSION

Because Alleyne's discharge was merely the delayed, neutral effect of alleged discrimination that took place outside the period of limitations, the order of the district court dismissing the complaint is AFFIRMED.

---

[2] The complaint does not allege a continuous violation spanning from the loss of Alleyne's seniority to his discharge because the loss of seniority was the only alleged discriminatory act. *See Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period.").