Ronnie **HILTON**, Plaintiff,

v.

**BEDFORD PAVING, LLC**, Hudson Paving and Construction, Inc., Central Roadways, Inc., Carriage Enterprises, Inc., Greg Schimpf, Anthony Pilato, and Stephen Carozzo, Defendants.

No. 08–CV–6552 CJS.

United States District Court, W.D. New York.

Dec. 17, 2010.

Michael Cobbs, Esq., Brown & Hutchinson, Rochester, NY, for Plaintiff.

James C. Holahan, Esq., Bond, Schoeneck & King PLLC, Rochester, NY, for Defendants.

## DECISION AND ORDER

CHARLES J. SIRAGUSA, District Judge.

## INTRODUCTION

This is an action alleging claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"). Now before the Court are the following applications: 1) Defendants' motion [# 25] to dismiss the Complaint; and 2) Plaintiff's cross-motion [# 31] for leave to file an amended complaint. For the reasons that follow, both applications are granted in part and denied in part.

## BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint [# 1] and proposed Amended Complaint [# 30] and incorporated documents. Bedford Paving, LLC ("Bedford"), Hudson Paving

("Hudson") and Carriage Enterprises ("Carriage") are all owned by Stephen Carozzo ("Carozzo"). Central Roadways, Inc. ("Central") is owned by Anthony Pilato ("Pilato"). Plaintiff, who is African-American, began working for Bedford and Hudson in or about 1989. Plaintiff "operat[ed] [a] snow plow and trucks, as well as other forms of manual labor," including "asphalt paving." Complaint [# 1] at ¶ ¶ 25, 42. Plaintiff performed both plowing and paving work, but was routinely laid off for periods of time between the paving season and the plowing season, after which he would be recalled for work. *See, id.* at ¶ ¶ 40–42, 44. Typically, after the paving season ended Plaintiff would be laid off until it began to snow.

In 2004, Bedford, Hudson, Central, and Carriage "merged or acted as joint venturers," for the purpose of obtaining a contract with Monroe County to provide snow plowing services at the Greater Rochester International Airport ("the Airport"). Complaint ¶ 29. The parties to the merger/joint venture subsequently employed Plaintiff to plow snow at the Airport.

In January 2005, Defendants hired defendant Greg Schimpf ("Schimpf") to "oversee plowing inside the security perimeter" at the Airport, in which capacity Schimpf became Plaintiff's supervisor. Complaint [# 1] ¶ 30. Schimpf frequently used the word "nigger" to refer to black employees. Plaintiff complained to Carrozzo about Schimpf several times, but Carozzo ignored the complaints. Complaint [# 1] ¶ 37. Prior to June 2005, Plaintiff complained to the Monroe County Affirmative Action Office about "workplace racism." Complaint [# 1] ¶ 38; EEOC Complaint. Plaintiff and other employees testified at a hearing in June 2005, and Schimpf was subsequently suspended for two weeks. EEOC Complaint.[1] Defen-

---

1. The Complaint in this action contradicts the EEOC complaint on this point, and states that

Schimpf was never disciplined for his harass-

dants laid off Plaintiff at the end of the paving season, sometime prior to November 2005. It began to snow on November 23, 2005. Ordinarily Plaintiff would have been recalled to work as soon as it began to snow, however he was never recalled to perform any snowplowing or paving work for Defendants.[2]

◼ On or about December 30, 2005, Plaintiff, proceeding *pro se,* filed[3] a discrimination complaint with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation. The complaint was filed against one entity, "Bedford Paving Co." The EEOC designated Plaintiff's complaint as case number 165–2006–00275. The complaint stated that Plaintiff began working for Bedford on April 10, 1989. The complaint alleged that in January 2005, Bedford hired "a new employee," who "used racial slurs and referred to black employees as 'niggers,'" and who "also refused to call in black employees for plowing." The complaint indicated that Plaintiff complained about this "to management," who failed to take remedial action, and who later retaliated against him. Specifically, the EEOC complaint stated:

November 23, 2005, was the first snow of the year. I was not called in to work as I should have been on November 22, 2005. None of the employees who participated in the fact finding conference have been called back to work. The harasser is still working. I believe I was denied recall, after 16 years on the

job, in retaliation for complaining about discrimination[.]

Complaint [# 1] at 12 (emphasis added).

Plaintiff subsequently retained an attorney. On August 22, 2006, Plaintiff's attorney wrote to the New York State Division of Human Rights ("NYSDHR"), enclosing a copy of Plaintiff's EEOC complaint, and asking that the "matter be transferred to the [NYSDHR], Rochester Regional Office for investigation and further handling." Despite asking to have the matter transferred to NYSDHR for "for investigation and further handling," at oral argument of the pending motion Plaintiff's counsel, Mr. Cobbs ("Cobbs"), stated that it was not his intention to discontinue the EEOC action. Instead, he said that it was his intention to have only the investigation of the matter transferred, since NYSDHR typically conducted a more thorough investigation than EEOC. Cobbs further stated that in his experience, once the NYSDHR conducted its investigation EEOC would "rubber stamp" NYSDHR's findings.

In any event, NYSDHR assigned the matter a case number, 10113824, and commenced an investigation. During the course of such investigation Hudson, Central, and Schimpf were added as respondents to the complaint, along with Bedford. Carriage, Pilato, and Carozzo were never named as respondents in either the EEOC action or the NYSDHR action. During the course of the NYSDHR investigation, Carozzo submitted an affidavit indicating that on or about December 23,

---

ing conduct, and was instead promoted. Complaint [# 1] ¶ 39.

**2.** The Court understands Plaintiff to allege that Central and Carriage were involved with the snowplowing aspect of his work, but not the paving aspect.

**3.** "In New York, a charge of discrimination may be filed with either the EEOC or the New

York State Division of Human Rights. Moreover, based upon a worksharing agreement between the EEOC and the NYSDHR, charges received by the Human Rights Division are automatically deemed dual-filed with the EEOC." *Campbell v. County of Onondaga,* No. 5:04–CV–1007 (NAM/GHL), 2009 WL 3163498 at *11 (N.D.N.Y. Sep. 29, 2009) (citations omitted).

2005 he called Plaintiff to ask him to return to work but Plaintiff never responded.[4]

In addition to opening its own investigation upon receiving Cobbs' letter, NYSDHR also forwarded a copy of the already-filed EEOC complaint to the EEOC, which opened yet another case file for the matter, having case number 16G–2006–04677. Consequently, at that point, Plaintiff had one complaint pending with NYSDHR and two complaints pending with EEOC, all consisting of the same complaint, but all having different case numbers.

On April 17, 2007, EEOC dismissed case number 165–2006–00275, and issued a right-to-sue letter. The dismissal notice indicated that EEOC was closing its file purportedly because "Respondent employ[ed] less than the required number of employees or is not otherwise covered by the statutes." The dismissal notice and right-to-sue letter indicated that it was sent to Defendants' attorney, Cobbs, and Plaintiff. Defendants' counsel indicates that he received the notice. However, at oral argument of the pending motions Cobbs stated that he and Plaintiff never received the document. The Court asked Cobbs to submit affidavits from himself and Plaintiff, attesting to that fact. On October 28, 2010, Cobbs and Plaintiff each filed affidavits [# 35] [# 36], swearing that they never received or knew about this right-to-sue letter until Defendants filed the subject motion to dismiss.

On June 26, 2007, NYSDHR issued a written "Determination After Investigation" ("NYSDHR Determination") concerning Plaintiff's complaint. The document's caption listed the following entities as "respondents": "Bedford Paving Company, Hudson Paving and Construction, Inc., Central Roadways, Inc., Greg Schimpf as Aider and Abettor." The statement did not refer to Carriage, Pilato, or Carozzo. The NYSDHR Determination indicated that NYSDHR found probable cause to believe that the respondents had engaged in, or were engaging in, unlawful discrimination.[5] The NYSDHR Determination further stated that the matter was "recommended for public hearing," and that the parties would be advised of further proceedings.

More than one year later, in August 2008, Plaintiff asked NYSDHR to dismiss the administrative proceeding, so that he could "pursue his claims in United States District Court." Complaint [# 1] at ¶ 21. NYSDHR granted that request, and on September 30, 2008, issued a final order dismissing the NYSDHR administrative action. *See*, Docket No. [# 25–7]. On September 19, 2008, at Plaintiff's request EEOC also issued a right-to-sue letter, concerning EEOC Charge No. 16G–2006–04677. The right-to-sue letter refers only to Bedford.

On December 5, 2008, Plaintiff commenced this action. The Complaint purports to state claims under Title VII, the NYHRL, Section 1981, and the "Rochester City Ordinance prohibiting unlawful discrimination." The Complaint alleges facts consistent with claims for hostile environment discrimination and retaliation. The Complaint also states that Plaintiff's employment was constructively terminated. Complaint [# 1] ¶ 43. It is unclear whether the Complaint is attempting to state a

---

4. Carozzo's alleged affidavit is not before the Court, but Cobbs discussed it during oral argument and Defendants' counsel agreed that Carozzo had stated that he called Plaintiff around December 23, 2005 to ask him to return to work.

5. As part of its investigation, the NYSDHR received statements from two white employees, confirming that Schimpf used the word "nigger." Complaint [# 1] ¶ 35.

claim for disparate treatment (*See,* Complaint [# 1] ¶ 19), but apart from the alleged slurs, the Complaint does not allege that Plaintiff was treated differently than a similarly-situated non-black employee. Plaintiff obtained extensions of time from the Court to complete service of the Summons and Complaint on Defendants, and such service was completed in February 2010.

On March 15, 2010, Defendants filed the subject Motion to Dismiss [# 25] the Complaint, pursuant to Rule 12(b)(1) and Rule 12(b)(6). Defendants maintain that dismissal is appropriate for the following reasons: 1) the Title VII claims are time-barred, because Plaintiff did not commence this action within ninety days of receiving the April 17, 2007 right-to-sue letter; 2) Plaintiff did not exhaust administrative remedies as to Title VII claims involving parties and claims that were not included in his EEOC complaint; 3) the Title VII claims against Schimpf, Pilato, and Carozzo must be dismissed, since individuals are not employers under Title VII; 4) the NYHRL and Section 1981 claims are time-barred by the statutes' respective three-year statute of limitations; 5) the complaint fails to state any claim for constructive termination; and 5) Plaintiff cannot assert claims under the City of Rochester's anti-discrimination ordinance.

Plaintiff has opposed certain aspects of Defendants' motion and has also cross-moved for leave to file an amended complaint. As for the cross-motion, Plaintiff contends that he is entitled to amend his complaint as of right, but he alternatively seeks the Court's leave to amend. The Proposed Amended Complaint is very similar to the original, except that it does not contain a constructive discharge claim or a claim under the Rochester City Code. Otherwise, the Proposed Amended Complaint

appears to merely amplify the factual allegations in the original Complaint.

On October 21, 2010, counsel for the parties appeared before the undersigned for oral argument of the motions.

## DISCUSSION

Amendments of pleadings are governed by Rule 15, which states, in pertinent part:

(a) Amendments Before Trial.

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading *or 21 days after service of a motion under Rule 12(b),* (e), or (f), whichever is earlier.

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

FRCP 15(a)(1) & (2) (emphasis added). In this case, Defendants filed their motion to dismiss [# 25] on March 15, 2010. On May 25, 2010, Plaintiff filed the subject motion to amend the complaint [# 31]. Plaintiff did not amend his Complaint within 21 days after Defendants served their motion to dismiss. Consequently, Plaintiff does not have a right to amend as he maintains.[6] Instead, Plaintiff must seek leave of the Court to amend, pursuant to Rule 15(a)(2).

It is well-settled that "[l]eave to file an amended complaint shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith,

---

**6.** Rule 15(a) was amended in 2009, and the cases interpreting the former rule upon which

Plaintiff relies are no longer good law. *See,* Pl. Memo of Law at 2.

undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001) (*quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); internal quotation marks omitted). In considering whether a proposed amendment would be futile, "the appropriate legal standard is whether the proposed complaint fails to state a claim, the traditional Fed.R.Civ.P. 12(b) standard." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.,* 621 F.Supp.2d 121, 124 (S.D.N.Y.2009).

As clarified by the U.S. Supreme Court, the standard to be applied to a 12(b)(6) motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly* ) (footnote omitted); *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (Indicating that *Bell*

*Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.), *rev'd on other grounds, Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999).

The Court is limited as to what evidence it can consider in ruling upon a 12(b)(6) motion:

> In considering a motion under Fed. R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed. R.Civ.P. 56. In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.

> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citations and internal quotation marks omitted).

### Plaintiff's Cross-motion to Amend

Applying the lenient standard for amendment of pleadings, the Court will allow Plaintiff to amend his complaint in part, although as discussed below some of the claims in the Amended Complaint are futile for reasons set forth in Defendants' motion to dismiss.

### Individuals Are Not Employers Under Title VII

It is unclear whether Plaintiff is alleging that the individual defendants are liable under Title VII. On one hand his Amended Complaint alleges that Schimpf, Pilato, and Carozzo are all "employees" within the meaning of Title VII. Amended Complaint ¶ 12. On the other hand Plaintiff's memo of law only argues that Shimpf, Pilato, and Carozzo are individually liable under the NYSHRL and Section 1981. *See,* Pl. Memo of Law [# 27] at 8–10. In any event, it is well-settled law in this Circuit that individuals cannot be sued under Title VII. *See, Ziegler v. Adams,* No. 07–2939–cv, 316 Fed.Appx. 52, 52–53 (2d Cir.2009) ("[I]ndividuals with supervisory control over a plaintiff are not subject to personal liability under Title VII.") (citations omitted). Accordingly, all Title VII claims against Schimpf, Pilato, and Carozzo are dismissed.

### Timeliness of Plaintiff's Title VII Claims

Defendants maintain that Plaintiff's Title VII claims are time-barred because he did not commence this action within 90 days of the date he presumably received the right-to-sue letter dated April 17, 2007. It is well settled that Title VII claims must be filed in federal court within ninety days of receipt of the EEOC's Right to Sue Letter. *See, e.g., Tubner v. West,* No. 97–7151, 1998 WL 639291 at *2 (2d Cir. Mar.

27, 1998) ("A private employee has ninety days from the receipt of a right-to-sue letter from the EEOC to commence a Title VII action in the federal court.") (unpublished) (citations omitted). "Normally it is assumed that a mailed document is received three days after its mailing. And normally it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice." *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525–26 (2d Cir.1996) (citations omitted). However, this presumption is rebuttable. *Id.* at 526 ("If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive.").

In this case, Plaintiff and Cobbs both submitted sworn affidavits indicating that they never received the right-to-sue letter dated April 17, 2007. Defendants have not submitted any contrary evidence, and they rely solely on the aforementioned presumption that Plaintiff received the letter three days after it was dated. It does not appear that Defendants will be able to present any further evidence on this point, since Defendants' counsel indicates that EEOC's file concerning charge number 165–2006–00275 was destroyed. Consequently, the Court cannot find as a matter of law that Plaintiff ever received the April 17, 2007 right-to-sue letter. Defendants' motion to dismiss the Title VII claim as untimely is therefore denied.

### Exhaustion of Title VII Claims

Defendants contend that the Court lacks subject-matter jurisdiction over Plaintiff's Title VII claims, because Plaintiff failed to exhaust his administrative remedies before

commencing this action. However, "presentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court." *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir.2000) (citation and internal quotation marks omitted). Therefore, Defendants' motion is dismissed to the extent that it is based on an alleged lack of subject-matter jurisdiction.

Defendants maintain that Plaintiff failed to exhaust his administrative remedies with regard to certain parties and claims. Specifically, Defendants contend that Plaintiff did not exhaust his claims against anyone except Bedford, since Bedford was the only respondent named in the EEOC complaint. Defendants also argue that Plaintiff failed to exhaust any claim of discrimination, except a claim that Bedford failed to recall him to work during the 2005–2006 snow-plowing season. The law concerning exhaustion of Title VII claims is clear:

> As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC.[7] We have recognized, however, that claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency. A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. This exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the

benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering.... In determining whether claims are reasonably related, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving.

*Deravin v. Kerik,* 335 F.3d 195, 200–201 (2d Cir.2003) (citations, footnotes, and internal quotation marks omitted).

■ Additionally, a plaintiff generally cannot assert a Title VII claim against someone not named in the EEOC complaint:

> A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant.... [However] courts have recognized an exception to the general rule that a defendant must be named in the EEOC complaint. This exception, termed the "identity of interest" exception, permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge.

*Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991). Courts apply a four-factor test to determine whether such an identity of interest exists, "thereby excusing [the plaintiff's] failure to name [that] defendant in the EEOC complaint:"

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party

---

7. The complaint may also be filed with the New York State Division of Human Rights.

*See, e.g., Carter v. New York City Dept. of Corr.,* 7 Fed.Appx. 99, 102 (2d Cir.2001).

are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209–210 (citation and internal quotation marks omitted).

Plaintiff's memorandum of law in opposition to Defendants' motion ignores Defendants' arguments concerning exhaustion of administrative remedies, except with regard to the timeliness of the Title VII claims. For example, Plaintiff does not argue that all Defendants in this action have an identity of interest with those persons named in the administrative complaint. Nor does Plaintiff argue that all of the claims alleged in this action are reasonably related to the claims in the administrative complaint.

■ The EEOC complaint alleges two types of discrimination—hostile environment and retaliation. The administrative complaint does not allege disparate treatment discrimination, and such a claim is not reasonably related to the claims in the administrative complaint. Neither the Complaint in this action nor the Amended Complaint adequately pleads a claim for disparate treatment discrimination in any event, contrary to Plaintiff's contentions, since Plaintiff does not plausibly allege that he was treated differently than any similarly-situated white employee. The administrative complaint also does not allege a failure to hire, since it does not indicate that Plaintiff applied for a job with Defendants in or after November 2005. Such a claim is also not reasonably

related to the claims in the administrative complaint. Moreover, neither the Complaint in this action nor the Amended Complaint adequately pleads a claim for failure to hire based on race. Instead, both pleadings allege that Defendants failed to recall Plaintiff to work in retaliation for him complaining about Schimpf. Consequently, the only claims that Plaintiff has pleaded in this action, under either Title VII, NYHRL, or Section 1981, are hostile work environment claims and retaliation claims. Such claims are also the only claims for which administrative remedies were exhausted.

■ Defendants also maintain that Plaintiff cannot pursue Title VII claims against Hudson, Central, and Carriage, since Bedford was the only company named in the administrative complaint. However, Hudson and Central were later added as respondents in the NYSDHR action. Additionally, both the Complaint and Amended Complaint in this action allege that Bedford, Hudson, Central, and Carriage "merged or acted as joint venturers." Complaint ¶ 29; Amended Complaint ¶ 28. Moreover, the Amended Complaint alleges that "all employees became employees of the entity formed as a result of the merger/joint venture." Amended Complaint ¶ 29. At the pleading stage, the Court finds that Plaintiff has adequately alleged that Bedford, Hudson, Central, and Carriage were all united in interest. Accordingly, the Court declines to dismiss the Title VII claims for hostile environment and retaliation against Bedford, Hudson, Central, and Carriage for failure to exhaust administrative remedies.

*Timeliness of the NYHRL and Section 1981 Claims*

The NYHRL and Section 1981 claims in this action are subject to a three-year statute of limitations. *See, Quinn v.*

*Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998) ("Quinn's cause of action under New York's Human Rights Law is governed by a three-year statute of limitations, measured from the filing of the action in court.") (citation omitted); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir.2004) ("The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years.") (citation omitted). Plaintiff commenced this action on December 5, 2008. Consequently, any NYHRL or Section 1981 claims arising prior to December 5, 2005, are time-barred.

■ Plaintiff has pled two types of claims under NYHRL and Section 1981— hostile environment and retaliatory failure to rehire. Plaintiff alleges that he was subjected to a racially-hostile working environment by Schimpf between January 2005 and October 2005. Amended Complaint [# 30] ¶ ¶ 39–40. Plaintiff admits that he was laid off in or before November 2005, and that he was never rehired to work for Defendants. Consequently, the hostile work environment necessarily ended prior to December 5, 2005. Therefore, Plaintiff's hostile environment claims under NYHRL and Section 1981 are time-barred.

However, the Court declines to find that the retaliation claims are untimely at this stage of the litigation. In the context of a Title VII [8] action, "[a]n employer's refusal to rehire or recall an employee after a layoff has specifically been held to be a discrete act under [*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("*Morgan*")]," to which the continuing violation doctrine does not apply. *Cunningham v. Washington Group Intern., Inc.*, No. 08–1308, 2009 WL 2971870 at *4 (W.D.Tenn. Aug. 11, 2009) (*citing Parisi v. Boeing Co.*, 400 F.3d 583, 586 (8th Cir.2005)). Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges." *Morgan*, 122 S.Ct. at 2072. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' " *Id.* at 2073.

■■ When an employer has refused to rehire someone, the "[m]ere continuing failure to rehire, without further action on plaintiff's part by way of reapplication or renewed application, is not sufficient to establish … continuing discrimination." *Abrahamsen v. Sperry Rand Corp.*, Civil Action No. 76 C 362, 1979 WL 241 at *3 (E.D.N.Y. Jun. 8, 1979). [9] Furthermore, reapplying for the same position, after not being rehired, does not extend a plaintiff's time to file an action:

A failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in refusal to rehire itself, cannot resurrect the old discriminatory act. *To hold oth-*

---

8. On this point, Title VII claims are analyzed the same as claims under Section 1981 and the NYHRL. *Roberts v. County of Nassau*, 140 Fed.Appx. 277, 279 (2d Cir.2005).

9. In *Abrahamsen*, the plaintiff alleged that at the time he was laid off, he was promised that he would be among the first employees rehired. Subsequently, the plaintiff learned that other employees were being rehired, and he decided that he was being discriminated against because of his age. However, he never reapplied to be hired. *Id.* at *2–3. The court held that the alleged discriminatory failure to rehire occurred when the defendant rehired other employees but not the plaintiff. *Id.* at *3 (Because the plaintiff never reapplied for employment, "there were no identifiable acts of discrimination against plaintiff that occurred after he realized in November 1972 that Spery was not rehiring him because of his age.").

*erwise would allow a plaintiff to unilaterally resurrect a stale claim simply by reapplying for the same position.*

Knowles v. Postmaster General, U.S. Postal Service, 656 F.Supp. 593, 601 (D.Conn. 1987) (emphasis added, citations omitted).

In this case, Plaintiff was not called back to work in November 2005 and he never reapplied for work. Instead, by his own statement, he "tried to contact defendant Carozzo several times between 2005 and the present to inquire as to his employment status either through direct contact or messages to Carozzo through mutual acquaintances and coworkers." Amended Complaint ¶ 48. Plaintiff essentially reiterated this statement in his affidavit submitted in opposition to Defendants' motion to dismiss:

> I called defendant Carozzo several times between 2005 and 2008 to inquire as to my employment status and also sen[t] messages to him through mutual acquaintances and coworkers regarding my work status and why I was not being called for snow plowing and paving assignments.
>
> Defendant Carozzo refused to speak with me regarding my work status and why I was not receiving any work until mid 2008 [10] when Carozzo's attorney call[ed] my attorney ... and advised that I should not try to contact Mr. Carozzo and that he would not talk to me.[11]

Pl. Affidavit ¶ ¶ 41–42. Even assuming that these statements demonstrated that Plaintiff "reapplied" for work, which the Court does not find, the Court concurs with the *Knowles* decision that a plaintiff cannot unilaterally extend the statute of limitations merely by reapplying for the same job from which he was terminated. *See also, Burnam v. Amoco Container Co.,* 755 F.2d 893, 894 (11th Cir.1985) ("[A] failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act. Otherwise, a potential plaintiff could always circumvent the limitations by reapplying for employment. A simple request for reinstatement seeks to redress the original termination.") (citations omitted); *Kennedy v. Chemical Waste Mgt., Inc.,* 79 F.3d 49, 51 (7th Cir. 1996) (Discussing situation where "an employee seeks to extend Title VII's statute of limitations ... by reapplying for the job from which he claims to have been unlawfully fired, even though it is plain that reapplication is not invited," and stating, "[t]his ploy-which resembles trying to take an untimely appeal by first filing a Rule 60(b) motion to set aside the judgment and then appealing from the denial of the motion, has not succeeded in Title VII cases.") (citations omitted).

A plaintiff's cause of action accrues when he "knew or should have known of the adverse treatment upon which he or she will ultimately sue." *McMillian v. New York City Dept. of Corrections,* 152 F.3d 919 (2d Cir.1998) (table) (Title VII case) (citation omitted); *accord, Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 131 (2d Cir.1996) ("Since plaintiff filed the claim more than three years after she

---

**10.** Based on Plaintiff's unilateral act in trying to call Carozzo in 2008, and Carozzo's alleged refusal to take Plaintiff's call, Plaintiff maintains that the discrimination against him continued into 2008. See, Amended Complaint ¶ 71.

**11.** Though it has no bearing on the Court's decision, an email submitted by Defendants' counsel appears to support his version of events, which is that it was actually Plaintiff's counsel who suggested that Carozzo not speak with Plaintiff unless the attorneys were present, and that Defendants' counsel merely agreed with that suggestion.

knew or should have known of the discrimination, the court correctly determined that the § 1981 claim was barred by the applicable statute of limitations."), *cert. den.* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997).

██ Here, Plaintiff was aware of all of the allegedly discriminatory acts, including the hostile environment and the retaliatory failure to recall him to work, on November 23, 2005. On that date Plaintiff purportedly knew that he should have been called to work. Additionally, Plaintiff believed that he had been retaliated against, because he filed his EEOC Complaint shortly thereafter, alleging such retaliation. However, it is undisputed that Carozzo attempted to recall Plaintiff to work on or about December 23, 2005. Carozzo represented this fact in a sworn statement to NYSDHR in opposition to Plaintiff's claim of discrimination. *See, Garcia v. Lewis,* No. 05 Civ. 1153(SAS), 05 Civ. 1154(SAS), 2005 WL 1423253 at *3 (S.D.N.Y. Jun. 16, 2005) ("The records of [underlying] state administrative proceedings may be considered" on a 12(b)(6) motion.) (citation omitted). Assuming that Carozzo's statement is true, then the retaliatory-failure-to-rehire claim necessarily arose *after* December 23, 2005, notwithstanding Plaintiff's belief that he should have been recalled a month sooner. Since Plaintiff commenced this action within three years of December 23, 2005, his retaliation claims under NYHRL and Section 1981 appear timely.

## CONCLUSION

Defendants' motion to dismiss and Plaintiff's cross-motion to amend are both granted in part and denied in part. The following claims are dismissed: 1) all Title VII claims against Schimpf, Pilato, and Carozzo; 2) all claims for constructive termination, disparate treatment, and failure to hire; 3) all claims under the Rochester City Code; and 4) all hostile environment claims under NYHRL and Section 1981.

The following claims in the Amended Complaint may go forward: 1) Title VII claims for hostile environment and retaliation against Bedford, Hudson, Central, and Carriage; and 2) claims for retaliatory failure to rehire under under NYHRL and Section 1981 against all Defendants.

SO ORDERED.